Before STATE INDUSTRIAL BOARD, Respondent.

MARTHA M. CONNELLY, Respondent, *v.* HUNT FURNITURE COMPANY and Another, Appellants.

Third Department, January 16, 1925.

Workmen's compensation — accidental injury — death caused by septicæmia must, under Workmen's Compensation Law, § 2, subd. 7, be preceded by accidental injury — award for death of claimant's intestate improper since septicæmia was induced by contact with gangrenous body which was being prepared for burial and was not preceded by accidental injury.

Compensation cannot be awarded, under subdivision 7 of section 2 of the Workmen's Compensation Law, for the death of an employee, caused by septicæmia brought about by the contact of his person with a gangrenous body which he was preparing for burial, since he did not suffer an accidental injury arising out of his employment prior to the time of the contact with the dead body.

COCHRANE, P. J., and HINMAN, J., dissent.

APPEAL by Hunt Furniture Company and another from an award of the State Industrial Board, made on the 24th day of December, 1923.

*William H. Foster,* for the appellants.

*Carl Sherman, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

H. T. KELLOGG, J.:

The employee came to his death from septicaemia, a pathogenic disease. His death was not compensable unless the disease naturally and unavoidably followed an accidental injury. (Workmen's Compensation Law, § 2, subd. 7.) There was here no accidental injury preceding or causing the disease. It was not an accident that the employee touched a gangrenous body which he was preparing for burial. The contact made was intended to be made and did not involve an occurrence or happening, sudden or unexpected. Moreover, the contact was not in itself an injury. There was no traumatism and no immediate physical hurt. Disease resulted from the transference of bacteria from the dead body to the employee, and their entry into the blood current of the employee through a break in the skin not occasioned by the employment. The disease did not immediately occur, and was not the sudden infliction of an injury. It arose through the gradual multiplication of the bacteria received and the subsequent exudation of deadly toxins through an extended period of time. Even if it could properly be said that the onset of the disease was in itself an

accidental injury, nevertheless it was not preceded by such an injury, so that under the plain reading of the act no recovery is permissible. The cases of *Richardson* v. *Greenberg* (188 App. Div. 248) and *Jeffreyes* v. *Sager Co.* (198 id. 446; affd., 233 N. Y. 535) are conclusive to bar an award.

The award should be reversed and the claim dismissed, with costs against the State Industrial Board.

McCANN, J., concurs; COCHRANE, P. J., and HINMAN, J., dissent.

VAN KIRK, J.:

We agree that the statements of the deceased as to how, where and when his injuries were received are sufficiently corroborated.

The question remaining is whether he received an accidental injury; whether the receiving into his system disease-producing bacilli, not preceded or attended by a separate accidental injury suffered in the course of the employment, is an accidental injury.

A disease contracted is an accidental injury in two conditions under the statute: (1) Such disease or infection as naturally and unavoidably results from an injury (Workmen's Compensation Law, § 2, subd. 7); (2) occupational diseases (Id. § 3, subd. 2) in which cases the disablement is to be treated as an accident. (Id. § 38.) The instant case does not disclose an occupational disease.

*Matter of Plass* v. *Central N. E. R. Co.* (169 App. Div. 826) holds, where an employee of a railroad company, while mowing grass along the right of way, came in contact with poison ivy, was poisoned, became sick and confined to his bed, where he contracted congestion of the lungs, from which he died, that contact with poison ivy which results in death is an accidental injury and an award to the employee was unanimously affirmed. There was no other accident disclosed except the contact with the ivy. On appeal (221 N. Y. 472) the court deals solely with the question whether the employee was at the time engaged in interstate commerce. The opinion does not mention the question whether or not there was an accidental injury. Upon a second appeal (226 N. Y. 449), it having been found upon a rehearing that the deceased employee was not at the time of the injury engaged in interstate commerce, the Court of Appeals affirmed the award without referring to the accidental injury and apparently that question was not presented to the court. *Christian* v. *State Conservation Comm.* (191 App. Div. 635), Justices WOODWARD and H. T. KELLOGG dissenting, holds that the contracting of lobar pneumonia, followed by heart toxemia, while working with arm and shoulder under cold water, is an accidental injury, citing the frost bite and sunstroke cases. This case was not reviewed by the Court of Appeals.

The contrary is held in *Bixby* v. *Cotswold Comfortable Co.* (195 App. Div. 659, 660), which case has never been reviewed by the Court of Appeals. There was a change in the personnel of the court between the decision in the *Christian* case and that in the *Bixby* case.

In *Eldridge* v. *Endicott, Johnson & Co.* (189 App. Div. 53), two justices dissenting, the award was sustained where the deceased employee was inoculated with anthrax bacilli while handling hides in the course of his employment; the bacillus entered through a razor cut which he had received in a barber shop; there had been an accidental personal injury, but it was not suffered in the course of his employment. That case was reversed in the Court of Appeals (228 N. Y. 21) because there was no proof that hides, such as those in question, usually and frequently contain anthrax germs and that a person working about them with an open wound is likely to receive the germ and die of anthrax. On page 25 it was said: " If this employee had been inoculated through the cut in his neck with anthrax germs from the hides and the cut had been received a few days before at the barber shop while being shaved, a question might arise as to whether the inoculation were an accidental personal injury arising out of the course of his employment. We do not reach this question and shall not attempt to decide it as the facts of the case are not substantiated by any evidence and the matter must be sent back to the Commission for a rehearing." Therefore, though the question of accidental injury must be finally decisive of the case, the Court of Appeals refrained from passing upon it. This question was apparently presented in *Horrigan* v. *Post-Standard Company.* There is no opinion either in the Appellate Division (184 App. Div. 921), where the award was affirmed, H. T. KELLOGG, J., dissenting, or in the Court of Appeals (224 N. Y. 620); but the statement in the latter report is: " He [claimant's husband] died August 8, 1917, from blood poisoning. It appeared that  *  *  *  he cut his fingers while working at home but felt no ill effects. His time of work for defendant commenced at seven-thirty in the evening  *  *  *. As part of his duties he cleaned out a urinal and in doing so put his injured hand into the water. Toward morning his finger began to swell and he complained of being ill. The infection continued and caused his death. The question was whether the poisoning was the result of the cut received by the deceased at his home, or whether the infection was received subsequently while engaged in cleaning the urinal, such latter work being in the course of his employment.  *  *  * Order affirmed." The Court of Appeals apparently held that, although the cut on his finger was received at home, still, if he was inoculated while cleaning the urinal in the course of his employment, there was an

accidental injury and the award was affirmed. Mr. Justice H. T. KELLOGG in the *Richardson Case* (*infra*) refers to this case and says that the record shows a finding that the wound upon the hand opened while the employee was cleaning the urinal, so that an accidental injury in the course of the employment preceded the infection. This may explain the decision of the Court of Appeals, though the " statement " does not mention it. There can be no distinction between an inoculation with anthrax bacilli and inoculation with other poisonous or disease-producing bacilli. In *Jeffreyes* v. *Sager Co.* (198 App. Div. 446; affd. on the opinion of Mr. Justice H. T. KELLOGG, 233 N. Y. 535) the difference between an accidental injury and a disease was precisely set forth. Claimant's fingers became gradually swollen, mummified, and finally gangrene set in. It was said that the contact between the claimant's hand and the solution was voluntary and intentional; also the injuries resulted from no occurrence which is referable to any moment of time which is definite. *Richardson* v. *Greenberg* (188 App. Div. 248) has not been reviewed by the Court of Appeals. In that case the deceased employee contracted glanders while leading a horse, having glanders, through the street. (This case arose before the amendment of the Workmen's Compensation Law, allowing awards in certain occupational disease cases.) *Lewis* v. *Ocean Acc. & G. Corp.* (224 N. Y. 18) is cited. That was an action upon an accident policy, assuring against disability from bodily injuries effected solely through accidental means; and the court held that, since the jury might find that a pimple had been punctured by some instrument and the result of the puncture was an infection of the tissues, it might conclude that the death was caused by accidental means within the meaning of the policy. That case did not involve the question of employment, or of an accidental injury therein, but Judge CARDOZO was of the opinion that, if a pimple was punctured and the result of the puncture was an infection of the tissues, there was an accident, stating, " We have held that infection resulting from the use of a hypodermic needle is caused by ' accidental means.' " He deals not with the inoculation itself but with the instrument or the opening of the port of entry of the inoculation. The *Richardson* case holds flatly that, where there is a simple infection without preceding accidental injury, the inoculation itself is not an accidental personal injury within the meaning of the statute. Two justices dissented in that case. A contrary holding is found in *Hood & Sons* v. *Maryland Casualty Co.* (206 Mass. 223), in which it was held, where a man had contracted glanders caring for horses, that it was in the nature of an accident that he became infected with the disease.

I think that the question presented here has not yet been passed upon by the Court of Appeals, but was passed upon in the *Richardson Case* (*supra*), and that there was no accidental injury within the meaning of the statute. The award should be reversed.

McCANN, J., concurs; COCHRANE, P. J., and HINMAN, J., dissent.

Award reversed and claim dismissed, with costs against the State Industrial Board.