H. P. HOOD AND SONS *vs.* MARYLAND CASUALTY COMPANY.

Suffolk.  March 7, 1910. — June 24, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Insurance,* Against liability.  *Words,* "Bodily injuries."

A policy insuring an employer against liability "imposed by law upon the insured for damages on account of bodily injuries or death . . . accidentally suffered by any employee," covers the amount paid by the insured in satisfaction of a judgment for reasonable damages obtained against the insured by one employed by him as a hostler for having negligently and without warning put him at work upon horses suffering with glanders and having made him clean up their stalls, whereby the hostler became infected with the disease and suffered injuries.

MORTON, J.  The defendant issued to the plaintiff corporation a policy insuring it "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death accidentally suffered while this policy is in force, by any employee . . . of the assured while on duty within the factory, shop or yard described in the schedule . . . in and during the operation of the trade or business described in the schedule."  While the policy was in force one Jeremiah Barry, who was employed by the plaintiff as a hostler in its stables at Charlestown, had the care of horses which were afterwards found to have been suffering from glanders and were killed, and Barry was directed to assist in cleaning up the stalls.  No notice was given to him that the horses suffered or had suffered from glanders.  Glanders is an infectious disease, and subsequently Barry was attacked by it and brought an action against the plaintiff for negligently putting him to work on the horses and thereby exposing him to the disease.  Judgment was rendered in his favor for $1,512, which the plaintiff paid in full.  The present action is brought to recover the amount so paid with the costs and expenses of suit.  The defendant was duly notified by the plaintiff of the bringing of the action against it and was requested, as provided in the policy, to take upon itself the defense of the suit, but it declined to do so on the ground that the cause of action did not come within the terms of the policy.  The case

was heard by a judge of the Superior Court * without a jury on stipulations by the parties as to the facts and the evidence. It was agreed that the damages assessed in Barry's favor were fair and reasonable, and it was also agreed that, if the judge found that the defendant was liable, he should add to the $1,512 such sum as he found to be reasonable and proper and necessarily disbursed by the plaintiff in the action of Barry against it. The judge found for the plaintiff in the sum of $2,474.68. The defendant asked the judge to make certain rulings and findings which the judge refused to make, and the defendant excepted thereto and to the findings and rulings that were made. The case comes here on report. If the rulings and findings are correct judgment is to be entered for the plaintiff; otherwise for the defendant.

The policy is entitled "Manufacturers Employers Liability Policy." The contract which it contains is one of indemnity in which the defendant engages to make good to the plaintiff any loss or damage which it may sustain by reason of its liability to its employees for bodily injuries accidentally suffered by them while engaged in doing the work which they were employed to do. It is a kind of insurance that has grown out of modern industrial and business conditions, and it is intended to afford full protection to employers in all cases where their employees have accidentally received bodily injuries for which they are liable. It also accomplishes the economic result with which, however, we have nothing to do, of distributing more or less widely some of the loss or damage which falls on those engaged in industrial occupations. It is to be noted that the policy does not contain the words "violent and external" in addition to the word "accidental," as is the case in many if not most accident policies. The insurance is liability insurance so called, and not insurance against accidents. The liability insured against is that "imposed by law upon the assured for damages on account of bodily injuries or death accidentally suffered . . . by any employee." Although the policy contains many conditions, there is no limitation or exception in regard to the kind or nature or cause of the accidents out of which the liability

---

\* *Lawton*, J.

insured against may arise. The fact that the accident may have been occasioned through negligence on the part of the insured is, therefore, immaterial. Though instructions to that effect were requested and refused and exceptions were taken to such refusal, they have not been argued; — the defendant being apparently content with the instructions given in regard to that matter.

The question then is whether the amount which the plaintiff was compelled to pay Barry was paid "for damages on account of bodily injuries accidentally suffered" by him within the meaning of the policy. It is plain that Barry suffered bodily injury in consequence of becoming infected with glanders; as much so as if he had had a leg or an arm broken by a kick from a vicious horse. Indeed it is possible that the bodily injury caused by glanders was greater and more lasting than that caused by a broken leg or arm would have been. It is plain also that he suffered the injury "within the factory, shop or yard described in the schedule," and "during the operation of the trade or business described in the schedule."

Was the injury brought about accidentally within the fair scope and meaning of the policy, or was it the result of disease contracted while in the employ of the plaintiff but for which the defendant is not liable? It is clear, we think, that the infection which caused the disease from which Barry suffered was due to accident. It was in the nature of an accident that he was set to work upon or cleaning up after horses that had glanders, and it was in the nature of an accident that he became infected with the disease. The language used by Mathew, L. J., in *Higgins* v. *Campbell & Harrison* and *Turvey* v. *Brintons*, [1904] 1 K. B. 328, 337, where the judgment of the Court of Appeal was sustained by the House of Lords (*Brintons* v. *Turvey*, [1905] A. C. 230), though there was a vigorous dissent by Lord Robertson, is appropriate here: "It was an accident that the workman, in dealing with the wool, was brought in contact with that which might infect him with this disease of anthrax, and it was a further accident that the disease attacked him." If the disease was the result of an accident then we do not see why it does not follow that the bodily injury which Barry suffered as the result of the disease was not accidentally suffered, nor why the case does not come

within the terms of the policy. The language is "bodily injuries accidentally suffered." It hardly could be broader. The intention is, as has been said, to afford full protection and indemnity to the assured. Any accident that causes bodily injury in any way is included. Bodily injury is more commonly associated perhaps with physical force of some sort, but in the absence of anything in the policy limiting it to that we do not see how or why it can or should be so restricted. A liability growing out of an accident which results in infecting the workman with a loathsome and dangerous disease and thereby causes him great and perhaps lasting physical injury would seem to be as much within the spirit and intent of the contract as if the injury had been caused by a blow or some other equally obvious manifestation of force. As was said by Lord Halsbury in *Brintons* v. *Turvey,* [1905] A. C.,230, 233, the anthrax case, "when some affection of our physical frame is in any way induced by an accident, we must be on our guard that we are not misled by medical phrases to alter the proper application of the phrase 'accident causing injury,' because the injury inflicted by accident sets up a condition of things which medical men describe as disease."

The construction which we are inclined to give to the policy accords with the great weight of authority in similar cases, and rests, we think, on sound principles. *Freeman* v. *Mercantile Mutual Accident Association,* 156 Mass. 351. *Hughes* v. *Clover, Clayton & Co.* [1909] 2 K. B. 798, affirmed by the House of Lords March 14, 1910. *Brintons* v. *Turvey,* [1905] A. C. 230 ; *S. C.* [1904] 1 K. B. 328. *Wicks* v. *Dowell & Co.* [1905] 2 K. B. 225. *Ismay, Imrie & Co.* v. *Williamson,* [1908] A. C. 437. *Fenton* v. *Thorley & Co.* [1903] A. C. 443. *Columbia Paper Stock Co.* v. *Fidelity & Casualty Co.* 104 Mo. App. 157. *Ætna Life Ins. Co.* v. *Fitzgerald,* 165 Ind. 317. *Fetter* v. *Fidelity & Casualty Co.* 174 Mo. 256. *Cary* v. *Preferred Accident Ins. Co.* 127 Wis. 67. *Omberg* v. *United States Mutual Accident Association,* 101 Ky. 303. *Delaney* v. *Modern Accident Club,* 121 Iowa, 528. *Martin* v. *Manufacturers' Accident Indemnity Co.* 151 N. Y. 94.

The defendant relies on *Bacon* v. *United States Mutual Accident Association,* 123 N. Y. 304. The deceased in that case died

from malignant pustule.   It did not appear how the disease was contracted, though from what is said in the dissenting opinion it might perhaps be inferred that it was contended that it was caused by the bacilli of anthrax coming from the car loads of hides which frequently passed the station where the deceased was employed, and from the cattle which were slaughtered in large numbers in the vicinity.   The certificate, however, expressly provided that the benefits under it should not extend " to any bodily injury of which there should be no external and visible sign, nor to any bodily injury happening directly or indirectly in consequence of disease; nor to any death or disability which may be caused wholly or in part by bodily infirmities or disease existing prior or subsequent to the date of this certificate."   What the deceased was insured against were " bodily injuries effected through external, violent and accidental means."   The form of the certificate or policy is enough, we think, to distinguish that case from this.

In accordance with the report the entry will be

*Judgment for the plaintiff.*

*M. O. Garner,* for the defendant.

*W. R. Sears,* for the plaintiff.